1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARC WILLIAM SCHMIDT,     ) Case No. EDCV 13-1331-JPR
                     )
          Plaintiff,  )
                     ) **MEMORANDUM OPINION AND ORDER**
      vs.         ) **AFFIRMING COMMISSIONER**
                     )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social    )
Security,               )
                     )
          Defendant.  )
                     )

**I.**    **PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Disability Insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed April 25, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and judgment is entered in her favor.

1

**II.  BACKGROUND**

Plaintiff was born December 21, 1963.  (Administrative Record ("AR") 47.)  He completed the 11th grade and has his GED.  (AR 48.)  He previously worked as a plumber and plumbing supervisor.  (AR 49, 66, 153.)

Plaintiff filed an application for DIB on April 27, 2009.  (AR 79, 83, 144-45.)  He alleged that he had been unable to work since July 1, 2006, because of depression and low-back, right-hip, and right-leg pain.  (AR 166.)  After his application was denied, he requested a hearing before an Administrative Law Judge.  (AR 99-100.)  A hearing was held on September 16, 2011, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  (AR 44-78.)  In a written decision issued November 21, 2011, the ALJ determined that Plaintiff was not disabled.  (AR 25-40.)  On June 6, 2013, the Appeals Council denied Plaintiff's request for review.  (AR 2-5.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.

1   _Lingenfelter_, 504 F.3d at 1035 (citing _Robbins v. Soc. Sec._
2   _Admin._, 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether
3   substantial evidence supports a finding, the reviewing court
4   "must review the administrative record as a whole, weighing both
5   the evidence that supports and the evidence that detracts from
6   the Commissioner's conclusion."   _Reddick v. Chater_, 157 F.3d 715,
7   720 (9th Cir. 1996).   "If the evidence can reasonably support
8   either affirming or reversing," the reviewing court "may not
9   substitute its judgment" for that of the Commissioner.   _Id._ at
10  720-21.
11  **IV.   THE EVALUATION OF DISABILITY**
12       People are "disabled" for purposes of receiving Social
13  Security benefits if they are unable to engage in any substantial
14  gainful activity owing to a physical or mental impairment that is
15  expected to result in death or which has lasted, or is expected
16  to last, for a continuous period of at least 12 months.   42
17  U.S.C. § 423(d)(1)(A); _Drouin v. Sullivan_, 966 F.2d 1255, 1257
18  (9th Cir. 1992).
19       A.   The Five-Step Evaluation Process
20       The ALJ follows a five-step sequential evaluation process in
21  assessing whether a claimant is disabled.   20 C.F.R.
22  § 404.1520(a)(4); _Lester v. Chater_, 81 F.3d 821, 828 n.5 (9th
23  Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the
24  Commissioner must determine whether the claimant is currently
25  engaged in substantial gainful activity; if so, the claimant is
26  not disabled and the claim must be denied.   § 404.1520(a)(4)(i).
27  If the claimant is not engaged in substantial gainful activity,
28  the second step requires the Commissioner to determine whether

the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v). That determination comprises the fifth and

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  final step in the sequential analysis.  § 404.1520; <u>Lester</u>, 81

2  F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

3     B.   <u>The ALJ's Application of the Five-Step Process</u>

4     At step one, the ALJ found that Plaintiff alleged an onset

5  date of July 1, 2006, but had engaged in substantial gainful

6  activity by working as a plumber from July 1 to July 31, 2006.

7  (AR 27.)  The ALJ further found that Plaintiff had worked for a

8  short period in 2009 but concluded it was an unsuccessful work

9  attempt that did not constitute substantial gainful activity.

10  (<u>Id.</u>)  Finally, the ALJ noted that Plaintiff "admitted at the

11  hearing that he had self-employment earnings in 2010 in the

12  amount of $11,262.00 from acting as a broker for plumbing

13  equipment," but she gave him the "benefit of the doubt" and

14  concluded that they did not arise from substantial gainful

15  activity, either.  (<u>Id.</u>)

16     At step two, the ALJ concluded that Plaintiff had severe

17  impairments of "degenerative disc disease, lumbar spine;

18  herniated disc, L5-S1; lumbar radiculitis;[2] insomnia; avascular

19  necrosis of the hip;[3] and alcohol dependence syndrome."  (AR 28.)

20  The ALJ found that Plaintiff's obesity, hypertension,

21

22     [2]Radiculitis is inflamation of a spinal nerve root.

23  <u>Radiculitis</u>, The Free Dictionary, http://medical-dictionary.
   thefreedictionary.com/radiculitis (last visited Aug. 20, 2014).

24     [3]Avascular necrosis is the death of bone tissue from a lack of

25  blood supply.  <u>Avascular necrosis</u>, Mayo Clinic, http://www.
   mayoclinic.org/diseases-conditions/avascular-necrosis/basics/

26  definition/con-20025517 (last updated May 4, 2012).  Avascular
   necrosis can lead to tiny breaks in the bone and the bone's

27  eventual collapse.  <u>Id.</u>  It can be caused by bone fracture or joint
   dislocation, and it is also associated with long-term use of high-

28  dose steroids and excessive alcohol intake.  <u>Id.</u>

5

hypothyroidism, and depression were nonsevere (AR 28-30),

findings that Plaintiff does not challenge.  At step three, the

ALJ determined that Plaintiff's impairments did not meet or equal

a Listing.  (AR 30-31.)  At step four, she found that Plaintiff

retained the RFC to perform a limited range of light work.[4]  (AR

31-38.)  Based on the VE's testimony, the ALJ concluded that

Plaintiff was unable to perform his past work as a plumber or

plumbing supervisor but could perform other jobs existing in

sufficient numbers in the national and regional economies.  (AR

38-39.)  The ALJ therefore concluded that Plaintiff was not

disabled.  (AR 40.)

**V.   DISCUSSION**

Plaintiff argues that the ALJ erred in (1) discounting the

opinion of his physician assistant, Chad Sweetnam and (2) failing

to properly consider Plaintiff's cervical-spine impairment

"individually and in combination with the other impairments in

assessing his [RFC]".[5]  (J. Stip. at 4.)

A.  <u>Applicable Law</u>

A district court must uphold an ALJ's RFC assessment when

the ALJ has applied the proper legal standard and substantial

---

[4]"Light work" involves "lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10
pounds."  § 404.1567(b).  "Even though the weight lifted may be
very little, a job is in this category when it requires a good deal
of walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls."  <u>Id.</u>
A person who can do light work can generally also do sedentary
work.  <u>Id.</u>

[5]The Court addresses the issues in an order different from
that followed by the parties, in order to avoid repetition and for
other reasons.

evidence in the record as a whole supports the decision.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ must consider all the medical evidence in the record and "explain in [her] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources."  20 C.F.R. § 404.1527(e)(2)(ii); see also § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case record").  In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints.  See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC findings from treating-physician opinions that were "permissibly discounted").

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.  Moreover, an ALJ may

7

accord less weight to opinions from "other sources," such as physician assistants, <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71 (9th Cir. 1996), <u>superseded by regulation on other grounds as noted in Hudson v. Astrue</u>, No. CV-11-0025-CI, 2012 WL 5328786, at *4 n.4 (E.D. Wash. Oct. 29, 2012), and may discount their testimony by giving "reasons germane to each witness for doing so." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotation marks omitted).

    B.   <u>Background</u>[6]

On May 19, 2009, Dr. Isaac Schmidt, who treated Plaintiff and specialized in orthopedic surgery, completed a "permanent and stationary" report in connection with Plaintiff's worker's compensation case. (AR 273-82.) He diagnosed "lumbar sprain/strain"; lumbar facet syndrome; herniated disc at L5-S1; avascular necrosis, bilateral hips; and trochanteric bursitis, bilateral hips.[7] (AR 278.) Dr. Schmidt noted that Plaintiff's previous job as a plumber had required "frequent lifting up to 100 pounds, with pushing and pulling of 100 pounds." (AR 274.) He opined that "[p]ertaining to his lumbar spine," Plaintiff "would be precluded from heavy work," which was "a 50 percent loss of his pre-injury capacity for bending, stooping, lifting, pushing, pulling and climbing or other activities involving

─────────────────────

[6]Because the parties are familiar with the facts, the Court summarizes them only to the extent they are relevant to the disputed issues.

[7]Bursitis occurs when bursae become inflamed. <u>Bursitis</u>, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/bursitis/ basics/definition/con-20015102 (last updated Aug. 20, 2014). Bursae are the small, fluid-filled sacs that cushion the bones, tendons, and muscles near joints. <u>Id.</u>

comparable physical effort." (AR 280.) He opined that "[p]ertaining to his right hip," Plaintiff was "precluded from prolonged standing and/or walking." (Id.)

On October 20, 2009, Dr. William C. Boeck, Jr., a board-certified orthopedic surgeon, performed a comprehensive orthopedic evaluation of Plaintiff at the Social Security Administration's request. (AR 238-42.) Dr. Boeck noted that Plaintiff complained of daily low-back pain with radiation into the right-hip area and down to the knee. (AR 238.) After performing a physical examination, Dr. Boeck found that "[t]he positive findings noted objectively in examination of this individual are the limited motions in the lumbar spine." (AR 242.) He opined that "[i]n view of the lack of any other corroborating positive signs," Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand or walk six hours in an eight-hour day, and sit six hours in an eight-hour workday. (Id.) He had no postural or manipulative limitations. (Id.)

On November 3, 2009, Dr. Leonard H. Naiman, who specialized in internal medicine,[8] reviewed Plaintiff's medical records and completed a physical-residual-functional-capacity assessment. (AR 245-52.) Dr. Naiman opined that Plaintiff suffered from "back pain" and could lift and carry 50 pounds occasionally and

---

[8]Dr. Naiman's electronic signature includes a medical specialty code of 19, indicating internal medicine. (AR 252); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

25 pounds frequently, stand and walk about six hours in an eight-hour day, sit for about six hours in an eight-hour day, perform unlimited pushing and pulling, and frequently climb, balance, stoop, kneel, crouch, and crawl.  (AR 246-47.)  On June 3, 2010, Dr. E. Cooper, who also specialized in internal medicine,[9] reviewed the medical evidence and affirmed Dr. Naiman's opinion. (AR 313.)

On August 20, 2010, Plaintiff reported to physician's assistant Lewis[10] that he had experienced neck pain radiating into the right arm for the preceding two months.  (AR 323.)  In September 2010, Lewis noted that Plaintiff complained of neck pain radiating to his right arm and causing right-arm numbness, tingling, and diminished strength.  (AR 319.)  In October 2010, a cervical-spine MRI revealed a "moderately sized herniated disc" at C6-7 and a "peripheral disc protrusion bilaterally at C5-6." (AR 327.)  A doctor advised Plaintiff to continue his pain medication and referred him to a spine clinic.  (AR 317.)

In January 2011, Dr. Rahul Basho at the Orthopedic Surgical Spine Clinic noted that Plaintiff complained of "cervical pain for over a year" that radiated to his right shoulder, arm, and hand.  (AR 337.)  Plaintiff reported that he had "difficulty with day to day activities" and had numbness in his thumb and two

---

[9]Dr. Cooper's electronic signature includes a medical specialty code of 19, indicating internal medicine.  (AR 313); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/ 0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

[10]The record does not reflect Lewis's other name.

fingers.  (Id.)  Plaintiff also reported low-back pain that radiated to his lower extremities, but he was "not receiving any active treatment for his low back at this time." (Id.)  Upon examination, Dr. Basho noted decreased range of motion and tenderness of the lumbar spine, decreased range of motion of the neck, and tenderness to palpation of the cervical region.  (Id.)  In the upper extremities, Plaintiff had motor strength of four on a scale of five "in the C6 distribution bilaterally" and decreased sensation in the right C6 nerve distribution.  (Id.)  After noting Plaintiff's x-ray and MRI results, Dr. Basho diagnosed C5-7 disc herniation with central foraminal stenosis, C6 radiculopathy to the right,[11] and lumbago.[12]  (Id.)  He prescribed physical therapy and noted that Plaintiff would "most likely benefit from surgical intervention with respect to the neck" but wanted "conservative treatment at this time." (AR 337-38.)

     In March 2011, Dr. Basho noted that Plaintiff complained of pain starting at the base of his neck and shooting into the right shoulder.  (AR 335.)  He denied any gait imbalance or difficulty with fine motor movements of the hands.  (Id.)  Upon examination,

_____

     [11]Cervical radiculopathy is a disease process marked by nerve compression from herniated disk material or arthritic bone spurs. Jason David Eubanks, Cervical Radiculopathy: Nonoperative Management of Neck Pain and Radicular Symptoms, Am. Family Physician (Jan. 1, 2010), available at http://www.aafp.org/afp/2010/0101/p33.html.  Cervical radiculopathy leads to neck and radiating arm pain or numbness in the distribution of a specific nerve root.  Id.

     [12]Lumbago is pain in the lower back. Lumbago, Merriam-Webster, http://www.merriam-webster.com/dictionary/lumbago (last visited Aug. 21, 2014).

Plaintiff had five out of five strength and intact sensation in the lower extremities (id.); in the upper extremities, he had four out of five strength in some muscles and five out of five in others (AR 335). Sensation in the right upper extremity was diminished along the C6 nerve distribution. (Id.) Plaintiff's shoulders were nontender and he had negative Hawkin's and Neer's tests bilaterally.[13] (AR 335-36.) Dr. Basho diagnosed cervical radiculopathy, prescribed physical therapy and Medrol,[14] and noted that if that treatment did not work, he would consider epidural steroid injections. (AR 336.) On September 2, 2011, physician's assistant Chad Sweetnam noted that Plaintiff had cervical radiculopathy and prescribed physical therapy. (AR 334.)

On September 6, 2011, Sweetnam completed a lumbar-spine RFC questionnaire. (AR 329-33.) Under "diagnosis," Sweetnam noted only "cervical radiculopathy."[15] (AR 329.) He noted Plaintiff's cervical-spine x-rays and MRI results and listed the "positive

---

[13]A positive Hawkin's test can reveal possible subacromial impingement or rotator-cuff tendonitis of the shoulder; a postitive Neer's test can indicate impingement of the rotator-cuff tendons of the shoulder. Thomas W. Woodward, M.D. et al., The Painful Shoulder: Part 1. Clinical Evaluation, Am. Family Physician (May 15, 2000), available at http://www.aafp.org/afp/2000/0515/p3079.html.

[14]Medrol, or methylprednisolone, is a corticosteroid used to relieve inflamation. Methylprednisolone Oral, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682795.html (last updated Sept. 1, 2010).

[15]Sweetnam did not mention Plaintiff's lumbar-spine or hip conditions anywhere on the form. Thus, all of the asserted limitations presumably stemmed from Plaintiff's cervical-spine conditions.

objective signs" as "4/5 motor strength right arm," decreased sensation, and a positive Hawkin's test. (AR 330.) Sweetnam opined that Plaintiff could walk for three to four blocks without rest, sit for 45 minutes and stand for 45 minutes at a time, stand and walk a total of two hours in an eight-hour day, and sit about four hours in an eight-hour day. (AR 331.) He could occasionally lift and carry 10 pounds but never more than that. (AR 332.) Plaintiff needed to walk for 15 minutes every hour, take unscheduled 15-minute breaks two or three times a day, and be able to shift positions at will from sitting, standing, or walking. (Id.) Sweetnam opined that Plaintiff had "significant" limitations in doing repetitive reaching, handling, or fingering; could bend and twist at the waist each for only 20 percent of an eight-hour workday; and would be absent from work about three times a month as a result of his impairments or treatment. (AR 333.)

In her decision, the ALJ gave "great weight, but not full weight," to the opinions of examining physician Boeck and reviewing physicians Naiman and Cooper. (AR 37.) She noted that their opinions were "generally consistent" in that they all found that Plaintiff could perform a range of medium-exertion work.[16] (Id.) The ALJ noted, however, that "[i]n order to give [Plaintiff] the benefit of the doubt," she had "adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole." (Id.)

---

[16]"Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." § 404.1567(c).

The ALJ also accorded "great weight" to Dr. Schmidt's opinion but gave Plaintiff "the benefit of the doubt and assessed additional limitations to account for [his] allegations of shoulder pain, insomnia and neck pain." (Id.)  Finally, the ALJ "considered the opinion of Chad Sweetman [sic], a physician assistant," but gave it "less weight than other qualifying medical source opinions" because it was not from an "acceptable medical source" and was "inconsistent with the medical records as a whole, which indicated a conservative course of treatment, including physical therapy." (Id.)  The ALJ therefore concluded that Plaintiff retained the RFC to perform a limited range of light work, specifically,

> [he] can lift and/or carry twenty pounds occasionally,
> ten pounds frequently.  [Plaintiff] can sit, stand or
> walk for about six hours each in an eight-hour workday,
> taking normal breaks.  [He] must be able to alternate
> positions every forty-five minutes for one to five
> minutes at the workstation. [He] can occasionally kneel,
> stoop, crouch and crawl.  [He] can occasionally climb
> ramps, stairs and never climb ladders, ropes or
> scaffolds.  [He] can push and/or pull twenty pounds
> occasionally and ten pounds frequently with his lower
> extremity. [He] can occasionally reach overhead with his
> non-dominant upper right extremity. [He] can frequently
> use his right hand for gross and fine manipulation and
> has no limitations on use of his left hand.  [He] can
> occasionally fully rotate his neck from side to side.
> [He] must avoid hazards such as unprotected heights and

dangerous moving machinery and avoid concentrated exposure to extremely cold weather.

(AR 31.)

C.   <u>Analysis</u>

For the reasons discussed below, the ALJ did not err in discounting Sweetnam's opinion or assessing Plaintiff's cervical-spine impairment.

1.   <u>The ALJ did not err in discounting Sweetnam's opinion</u>

The ALJ did not err in rejecting the opinion of physician's assistant Sweetnam.  As the ALJ noted (AR 36), Sweetnam is not an "acceptable medical source" under Social Security regulations. <u>See</u> 20 C.F.R. § 404.1513(a) ("[a]cceptable medical sources" include only licensed physicians, psychologists, optometrists, podiatrists, and speech pathologists).  Rather, the regulations treat physician's assistants as "other sources," <u>see</u> § 404.1513(d), and the ALJ may reject opinions from "other sources" by giving "reasons germane to each witness for doing so," <u>Molina</u>, 674 F.3d at 1111 (internal quotation marks omitted); <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1224 (9th Cir. 2010) (internal quotation marks omitted).

Moreover, as the ALJ noted, Sweetnam's opinion was "inconsistent with the medical records as a whole" and Plaintiff's conservative course of treatment.  (AR 37.)  Indeed, Sweetnam opined that Plaintiff's cervical-spine impairment, alone, resulted in significant limitations, including an inability to sit or stand for more than 45 minutes at a time, walk for more than three or four blocks before resting, or lift

15

1   more than 10 pounds (AR 331-32); but in March 2011, Dr. Basho

2   noted that Plaintiff could walk on his heels and toes, perform a

3   tandem gait, and had normal strength and sensation in his lower

4   extremities (AR 335-36).  Indeed, a physical exam revealed

5   reduced sensation only along the C6 nerve in the right arm and

6   slightly reduced strength in some of the muscles of his upper

7   extremities.  (AR 335.)  Moreover, Plaintiff's cervical-spine

8   condition was treated with only medication and physical therapy

9   (see AR 334-38); although Dr. Basho noted that Plaintiff might

10  benefit from epidural injections or surgery if his symptoms did

11  not improve (id.), nothing indicates that any physician

12  administered such treatment or found that it was actually

13  warranted.  These were therefore sufficient reasons for

14  discounting Sweetnam's opinion.  See Bayliss, 427 F.3d at 1218

15  ("inconsistency with medical evidence" is germane reason for

16  discounting laywitness testimony); Carter v. Astrue, 472 F. App'x

17  550, 553 (9th Cir. 2012) ("We have held that inconsistency with

18  medical evidence is a germane reason to reject lay testimony.");

19  see also 20 C.F.R. § 404.1527(c)(4) ("Generally, the more

20  consistent an opinion is with the record as a whole, the more

21  weight we will give to that opinion.").

22      Plaintiff acknowledges that Sweetnam is not a "valid medical

23  source" but argues that under Social Security Ruling 06-03p, 2006

24  WL 2329939 (Aug. 9, 2006), "his opinions nevertheless may rise to

25  the level of treating opinion status depending on the degree of

26  treatment" he provided.  (J. Stip. at 20.)  But SSR 06-03p merely

27  states that depending on the relevant facts and circumstances,

28  the opinion of an "other" medical source may be entitled to more

16

weight than the opinion of an "acceptable" medical source, stating, "[f]or example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." See 2006 WL 2329939, at *5.  But Sweetnam apparently treated Plaintiff only once, on September 2, 2011, and he made no clinical findings in that note other than stating that Plaintiff had cervical radiculopathy and should undergo physical therapy.[17] (AR 334.)  And as discussed above, Sweetnam's opinion regarding Plaintiff's RFC was inconsistent with the medical record, which reflected only conservative treatment.  The ALJ therefore was not obligated to treat Sweetnam's assessment as a "treating opinion."

Remand is not warranted on this ground.

## 2. The ALJ did not err in assessing Plaintiff's cervical-spine impairment

Plaintiff concedes that if he "had only suffered from lumbar spine and hip impairments, the ALJ's [RFC] assessment perhaps would be supported by substantial evidence" because "a reasonable person may accept the opinions of Drs. Boeck, Naiman and Schmidt to determine that [Plaintiff] is limited to the [assessed] range of light work." (J. Stip. at 7.)  Plaintiff argues, however, that "[s]ince the onset of [his] cervical spine impairment as of

---

[17]Sweetnam also dictated the January 2011 evaluation note, which was signed by Dr. Basho, but nothing indicates that Sweetnam, rather than the doctor, treated Plaintiff that day. (See AR 337-38.)

approximately June 2010, a reasonable person could not accept the opinions of Drs. Boeck, Naiman, Cooper and Schmidt because they did not have an opportunity to consider the impact that [Plaintiff's] cervical radiculopathy had on his ability to work." (J. Stip. at 9 (citation omitted).)

Plaintiff would perhaps be correct if the ALJ had relied solely on those doctors' opinions in formulating the RFC assessment. But after crediting those opinions, all of which stated that Plaintiff could perform a range of medium work, the ALJ in fact gave Plaintiff the "benefit of the doubt" and assessed significant additional limitations based on his cervical-spine impairment and reported symptoms. (See AR 37.) Plaintiff's medical records reflect that he had a moderately sized herniated disc at the left C6-7 and a peripheral disc protrusion bilaterally at C5-6 (AR 327); upon examination, Dr. Basho noted that Plaintiff had slightly diminished strength in some of his right-arm muscles and diminished sensation in the right C6 nerve distribution (AR 335; see also AR 330 (Sweetnam's RFC assessment noting "4/5 motor strength right arm" and decreased sensation along right C6 distribution)). Moreover, in a September 2010 disability report, Plaintiff reported that he had developed neck, shoulder, and right-arm conditions in June 2010, which resulted in "neck and shoulder numbness down [his] right arm." (AR 189.) At the September 2011 hearing, Plaintiff testified that he had pain in his neck and shoulders (AR 62), and because of his cervical-spine problems, he could "probably get [his] elbow about even with [his] shoulder" but if he lifted it "any further than that, it's like electric shock going up [his]

arm." (AR 54.) He said he had numbness and tingling in some of his fingers (AR 62, 65), and as a result he had trouble grasping objects with his right hand (AR 65).[18] Plaintiff asserted that he had trouble lifting things with his right arm (AR 57); he could carry less than five pounds with his right hand before experiencing pain or discomfort (AR 63) and used his left hand – which was his dominant hand (AR 48, 65) – to carry a gallon of milk (AR 63). At the hearing and in his disability reports, moreover, Plaintiff attributed his standing and sitting limitations to his low-back condition, not his later cervical-spine problems. (See AR 54, 60-62, 166, 177.) The ALJ accommodated those medical findings and many of Plaintiff's subjective complaints by, for example, limiting Plaintiff to lifting and carrying 20 pounds occasionally and 10 pounds frequently, only occasional reaching overhead with his right arm, only frequently using his right hand for manipulation, only occasionally rotating his neck from side to side, and only occasionally kneeling, stooping, crouching, and crawling.[19] (AR 31.)

To the extent Plaintiff contends the ALJ should have

---

[18]Plaintiff's allegations that he had trouble grasping with his right hand appear to conflict with Dr. Basho's observation in March 2010 that Plaintiff denied any difficulty with fine motor movements of the hands. (AR 335.)

[19]To the extent Plaintiff alleged limitations exceeding the RFC, moreover, the ALJ properly discredited them because, among other things, he had received only conservative treatment for his allegedly debilitating conditions and made inconsistent statements about his alcohol use and how he first injured his back. (AR 33.) Plaintiff has not challenged the ALJ's credibility determination.

assessed additional limitations based on physician's assistant
Sweetnam's RFC assessment (J. Stip. at 8-10), that argument
fails.  As previously discussed in Section V.C.1, the ALJ
permissibly rejected Sweetnam's opinion because it was
inconsistent with the evidence and Plaintiff's conservative
treatment.  As such, she was not obligated to include his
assessed limitations in the RFC assessment.  See Batson, 359 F.3d
at 1197.  Plaintiff also contends that the ALJ erroneously
determined that Plaintiff's "cervical spine impairment would only
result in a limitation against side-to-side rotation and not
other limitations such as lifting, carrying, reaching, handling
and fingering because of radiculopathy." (J. Stip. at 10.)  But
as previously discussed, the ALJ in fact included several
additional RFC limitations in order to accommodate Plaintiff's
cervical-spine impairment, such as limitations on lifting and
carrying, overhead reaching, stooping, crouching, and use of his
right hand for manipulation.  (AR 31.)

     Plaintiff also contends that "as a lay person, 'an ALJ is
simply not qualified to interpret raw medical data in functional
terms.'" (J. Stip. at 10 (some internal quotation marks omitted)
(quoting Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal.
2008)).)  It is true that an ALJ may not simply substitute her
own opinion for a doctor's professional interpretation of
clinical testing.  See Day v. Weinberger, 522 F.2d 1154, 1156
(9th Cir. 1975) (noting that hearing examiner erred by failing to
"set forth any specific reasons for rejecting the . . . doctors'
uncontroverted conclusions" and instead "go[ing] outside the
record to medical textbooks for the purpose of making his own

exploration and assessment as to claimant's physical condition"
even though he "was not qualified as a medical expert").  Here,
however, the ALJ gave legally sufficient reasons for discounting
the opinion of Sweetnam, an "other source" under the regulations;
she also appropriately considered all the medical evidence and
Plaintiff's subjective complaints and formulated an RFC that was
consistent with them.  (See AR 31-38 (summarizing evidence and
Plaintiff's subjective complaints)); SSR 96-8p, 1996 WL 374184,
at *5 (RFC assessment "must be based on all of the relevant
evidence in the case record," such as medical history, laboratory
findings, effects of treatment, medical-source statements,
effects of symptoms, and recorded observations (emphasis in
original)); cf. id. at *7 ("If the RFC assessment conflicts with
an opinion from a medical source, the adjudicator must explain
why the opinion was not adopted.").  Plaintiff also relied on the
opinions of Drs. Schmidt, Boeck, Naiman, and Cooper.  The ALJ
therefore acted within her authority.  See Vertigan v. Halter,
260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the
responsibility of the ALJ, not the claimant's physician, to
determine residual functional capacity."); 20 C.F.R.
§ 404.1546(c) ("[T]he administrative law judge . . . is
responsible for assessing your residual functional capacity.");
see also 20 C.F.R. § 404.1545(a)(1) ("We will assess your
residual functional capacity based on all the relevant evidence
in your case record."); SSR 96-5p, 1996 WL 374183, at *5 (July 2,
1996) (RFC determination is reserved to ALJ and "is based upon
consideration of all relevant evidence in the case record,
including medical evidence and relevant nonmedical evidence, such

as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

To the extent Plaintiff argues that he is entitled to remand based on the ALJ's failure to list his cervical-spine condition as a severe impairment at step two of the sequential disability analysis (see J. Stip. at 11), that claim fails.  Even if the ALJ erred, it was harmless because she adequately considered that condition and its resulting limitations when formulating Plaintiff's RFC at step four.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list bursitis at step two harmless when ALJ "extensively discussed" condition and "considered any limitations posed by [it]" at step four).

Finally, any error in the ALJ's assessment of Plaintiff's limitations from his cervical-spine impairment is harmless for the additional reason that even accounting for more such limitations, Plaintiff remained able to perform one of the jobs identified by the VE.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (finding error harmless when "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion").  The VE originally testified that based on the ALJ's RFC determination, Plaintiff would be able to perform three positions.  (AR 74-76.) Plaintiff's counsel then asked whether Plaintiff would be able to work with the additional limitation of "use of his right hand less than occasionally" because of his cervical-spine problems,

and the VE testified that he could still do the rental-clerk job.
(AR 76-77.)

Plaintiff is not entitled to remand on this ground.

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four
of 42 U.S.C. § 405(g),[20] IT IS ORDERED that judgment be entered
AFFIRMING the decision of the Commissioner and dismissing this
action with prejudice.  IT IS FURTHER ORDERED that the Clerk
serve copies of this Order and the Judgment on counsel for both
parties.

DATED: August 26, 2014

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

_____

[20]     This sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."